**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

LEROY PEOPLES,

                            Plaintiff,

    v.

RICH HREBIN, et al.,                                No. 9:19-CV-1600
                                                               (GLS/CFH)
                            Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Leroy Peoples<br>Plaintiff pro se | |
| Broome County Attorney's Office<br>Broome County Office Building<br>60 Hawley Street<br>P.O. Box 1766<br>Binghamton, New York 13902-1766<br>Attorney for Defendants | JENNIFER L. CHURCH, ESQ.<br>Assistant County Attorney |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se Leroy Peoples ("plaintiff"), who was, at all relevant times, in the custody of the Broome County Sheriff and confined in the Broome County Jail ("Broome C.J."), brings this action pursuant to pursuant to 42 U.S.C. § 1983, alleging that defendants Broome C.J. Correction Officer ("C.O.") Rich Hrebin ("C.O. Hrebin") and

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Broome C.J. Sergeant David Stanton ("Sgt. Stanton") (collectively, where appropriate, "defendants") violated his constitutional rights under the First and Fourteenth[2] Amendments. See Dkt. No. 1 ("Compl.").

Following initial review of plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), United States District Court Judge Gary L. Sharpe held that the following claims survived initial review: (1) excessive force claim against C.O. Hrebin, and (2) retaliation claim against Sgt. Stanton. See Dkt. No. 8 at 17. The Court dismissed, without prejudice, plaintiff's remaining claims, and terminated the remaining defendants from the action. See id. 17, 18. Plaintiff did not file an amended pleading in this action.

Presently pending before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. See Dkt. No. 31. Plaintiff did not oppose the motion. For the reasons stated herein, it is recommended that defendants' motion be granted, and plaintiff's complaint be dismissed.

## I. Background

On August 23, 2019, while incarcerated in Broome C.J., plaintiff engaged in a physical altercation with a fellow inmate, Antonio Jones ("Jones"). See Compl. at 13. At the conclusion of the altercation between plaintiff and Jones, C.O. Hrebin handcuffed plaintiff. See id. at 7. Plaintiff alleges that, despite complying with correction staff's

---

[2] As the Court previously explained, the law is unclear as to whether the excessive force claim of plaintiff, as person incarcerated for an alleged violation of "parole/post-release supervision," should be analyzed under the Eighth Amendment (convicted criminals) or Fourteenth Amendment (pre-trial detainees), see Dkt. No. 8 at 8. However, for the reasons discussed herein, the undersigned need not resolve this issue. For the sake of consistency, the undersigned will refer to plaintiff's excessive force claim against C.O. Hrebin as being asserted under the Fourteenth Amendment, as defendants do in their memorandum of law in support of their motion for summary judgment. See Dkt. No. 31-17 at 10.

2

orders, C.O. Hrebin applied the handcuffs too tightly and "pulled [plaintiff] up off the carpet from behind," which injured plaintiff's right wrist. Id.; see Dkt. No. 1-1 at 5. Following an examination by Broome County medical personnel on September 4, 2019, plaintiff "wrote a complaint to the State Commission of Corrections . . ., approximately dated 9/12/19 about being assaulted by [C.O.] Hrebin . . . ."  Compl. at 7.d  Liberally construed, plaintiff asserts a Fourteenth Amendment claim for excessive force against C.O. Hrebin.

On August 26, 2019, while "confined to Medical #2," "[p]laintiff told [Sgt.] Stanton . . . that he would like [C.O.] Hrebin arrested for assault[.]"  Compl. at 12.  In response, Sgt. Stanton informed plaintiff that he would be arrested for second degree assault based on his physical altercation with Jones.  See id.  On August 27, 2019, after plaintiff returned to Special Housing Unit ("SHU"), Sgt. Stanton "arrested" him and charged him with second degree assault pursuant to New York State Penal Law § 120.05 based on the August 23, 2019 physical altercation with Jones.  Id.  Liberally construed, plaintiff alleges a First Amendment retaliation claim against Sgt. Stanton.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The moving party has the burden of showing the absence of a genuine dispute of material fact by providing the Court with portions of

3

"pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion.  Celotex, 477 U.S. at 322; see FED. R. CIV. P. 56(c).  A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

     If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial."  Id. at 248, 250; see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp. (Motors Holding Div.), 758 F.2d 839, 840 (2d Cir. 1985) (per curium)).  Furthermore, "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (brackets omitted) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).  Indeed, Fed. R. Civ. P. 56(e) explicitly states that "[w]hen a motion for summary judgment is made and supported as provided

4

in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obligated to construe his pleadings liberally." (internal quotation marks and citations omitted)).

Rule 56 also provides that if a nonmoving party fails to oppose a summary judgment motion, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" FED. R. CIV. P. 56(e)(3). However, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment. Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating

5

that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  If the evidence submitted in support of the motion for summary judgment does not meet the movant's burden of production, "'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'"  Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001) (quoting Fed. R. Civ. P. 56(e) Advisory Committee Notes to 1963 amendment) (additional citation omitted).  "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion." Vermont Teddy Bear Co., 373 F.3d at 244.  Thus, although plaintiff did not oppose defendants' motion for summary judgment, "the Court will not simply grant defendants' motion automatically, but will accept the truth of defendants' factual allegations, and determine whether defendants are entitled to summary judgment." Allaway v. McGinnis, 473 F. Supp. 2d 378, 381 (W.D.N.Y. 2007).

### III. Discussion[3]

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration.  See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined

---

[3] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement applies "'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" Cucchiara v. Dumont, No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *4 (N.D.N.Y. Apr. 26, 2019) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)); see also Baez v. Parks, No. 02-CV-5821 (PKC/DF), 2004 WL 1052779, at *5 (S.D.N.Y. May 11, 2004) ("[T]he PLRA's strict exhaustion requirement does indeed apply in actions brought by pretrial detainees."). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. See Porter, 534 U.S. at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated." Cuadrado v. Brueault, No. 9:14-CV-1293 (DNH/CFH), 2015 WL 1606178, at *3 (N.D.N.Y. Apr. 8, 2015); see Jones v. Bock, 549 U.S. 199, 218 (2007).

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (internal quotation marks and citation omitted). Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, in Ross v. Blake, the Supreme Court held that "[c]ourts may not engraft an unwritten

7

'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, ____ U.S. ____ 136 S. Ct. 1850, 1862 (2016). Thus, the special circumstances exception previously promulgated by the Second Circuit in Hemphill is no longer consistent with the statutory requirements of the PLRA. See Williams v. Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

However, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, ____ U.S. ____, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

There is no genuine dispute that, at all relevant times, Broome C.J. had in place a seven-step grievance procedure. See Dkt. No. 31-15 at 1-2. First, the inmate must "[a]ttempt to get the issue resolved with the housing officer." Id. at 1. Second, "[i]f a resolution cannot be found [the inmate] may request a grievance form from the grievance officer[,]" who "conducts daily unit tours." Id. The inmate "must file the grievance within [five] days." Id. Third, the "grievance will be investigated and [the

inmate] will receive a written determination from the grievance coordinator within five . . . business days." Id.  Fourth, if the inmate is "not satisfied with the grievance coordinator's decision, [the inmate] may appeal the determination to the Corrections Facility Administrator within two . . . business days." Id. at 2.  Fifth, the inmate "will receive a response within five . . . business days." Id.  Sixth, if the inmate is "still . . . not satisfied with the determination [the inmate] may appeal within three . . . business days and [the inmate's] grievance will be sent to the State Commission of Correction within three . . . business days." Id.  Seventh, the inmate "will receive a response from the Commission of Correction within . . . 45 business days of their receipt of the grievance." Id. (parenthesis omitted).

"Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of [all administrative remedies] may a prisoner seek relief pursuant to section 1983 in a federal court."  Murray v. Goord, 668 F. Supp. 2d 344, 355-56 (N.D.N.Y. 2009).  On a motion for summary judgment, "[t]he defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action." McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017), report and recommendation adopted, No. 9:16-CV-277 (MAD/DJS), 2018 WL 879270 (N.D.N.Y. Feb. 14, 2018).

### 1. Plaintiff Failed to Exhaust Available Administrative Remedies

As stated above, plaintiff did not oppose defendants' motion.  Therefore, the undersigned "must accept [d]efendants' statement, which is supported and

9

uncontroverted on the record . . ., that [p]laintiff has failed to properly exhaust available administrative remedies as true under Local Rule [56.1] and [Fed. R. Civ. P.] 56(e)." Oliver v. Outhouse, No. 9:06-CV-1412 (LEK/RFT), 2008 WL 508909, at *4-5 (N.D.N.Y. Feb. 21, 2008).[4]  Because there is no factual dispute on that dispositive issue, summary judgment is appropriate.

In their statement of material facts, submitted pursuant to Local Rule 56.1, defendants stated that, upon being booked into Broome C.J., plaintiff received an inmate handbook, which provides inmates with "instructions . . . regarding how to file a grievance . . . ." Dkt. No. 31-16 at 5 ¶ 28; see id. at 4 ¶ 21.  In support of this statement, defendants proffer Maj. Smolinsky's sworn affidavit, which states that "[i]t is a routine practice of the Broome [C.J.] that every inmate receives a copy of the Inmate Handbook upon booking into the facility."  Dkt. No. 31-5 at 1 ¶ 2.  Defendants also submit as an exhibit "[a] copy of the grievance section of the Inmate Handbook effective May 29, 2019, which was in effect during the time [p]laintiff was booked into the facility[,]" and sets forth the facility's above-cited seven-step inmate grievance procedure.  Id. at ¶ 3; see Dkt. No. 31-15.

Further, defendants submit that, on October 10, 2019, when Broome C.J. Inmate Grievance Officer "McPeak attempted to retrieve a completed grievance form from [p]laintiff[,] he stated [that] it was not yet complete and he requested [that she] return [the next day] to pick it up."  Id. at ¶ 23.  When McPeak returned the following day, she "received a note from [p]laintiff indicating that he [wa]s not returning the grievance form to her as he had already mailed it to Maj[.] Smolinsky."  Id. at ¶ 24.  Thus, defendants

---

[4]  Defendants raised plaintiff's failure to exhaust administrative remedies as an affirmative defense in their Answer to plaintiff's Complaint.  See Dkt. No. 13 at 4 ¶ 29.

state that plaintiff "did not return a completed grievance to" McPeak, despite her and the Inmate Handbook's instructions to do so, and that the facility "has no record of any grievances filed by [p]laintiff relating to this matter." Dkt. No. 31-16 at 4 ¶¶ 25, 26.

Defendants' admissible documentary evidence supports these statements. Defendants submit the sworn affidavit of Jennifer McPeak ("McPeak"), who served as the Broome C.J. Inmate Grievance Officer at all relevant times between May 2019, and December 2019. See Dkt. No. 31-4 at 1 ¶ 1. McPeak explains that her duties as Inmate Grievance Officer "included reviewing and responding to grievances filed by inmates held at the Broome [C.J.], as well as maintaining records of inmate grievances." Id. at ¶ 3. In addition, McPeak "conducted daily unit tours to discuss the grievance process with inmates who wished to file a grievance, provide grievance forms to inmates upon request and collect completed grievances from inmates for filing." Id. at 1-2 ¶ 4. McPeak explains that records of inmate grievances are kept as the usual course of business at Broome C.J. See id. at 2 ¶ 5. Such records of inmate grievances are "made contemporaneously with the inmate grievance." Id.

McPeak states that "[o]n October 9, 2019, [she] recall[s] [p]laintiff . . . stating that he had a medical issue concerning his wrist[,]" but that "he did not wish to provide any details so [she] gave him a grievance form and explained the grievance process to him . . . specifically advis[ing] him to return [it] to [her] once it [wa]s completed." Dkt. No. 31-4 at 2 ¶ 7. On October 10, 2019, plaintiff informed McPeak that his grievance was not completed and asked her to return to collect it the following day. See id. at ¶ 8. McPeak states that, on October 11, 2019, when she returned to plaintiff's cell to collect his grievance, she "received a note from [p]laintiff indicating [that] he [wa]s not returning

11

the grievance form to [her] and [that] he had mailed it to Maj[.] Smolinsky." Id. at ¶ 9. "On October 16, 2019, Maj[.] Smolinsky advised [McPeak that] he did not receive anything from [p]laintiff." Id. at ¶ 10.

McPeak further explains that "[p]laintiff did not request a second grievance form regarding the incident of record on August 23, 2019[,] or regarding any claims of retaliation against [Sgt.] Stanton . . . ." Dkt. No. 31-4 at 3 ¶ 11. She also indicates that, "[a]fter a diligent search of the inmate grievance records, there was no record of a grievance by [p]laintiff regarding the incident on August 23, 2019[,] or regarding any claims of retaliation against [Sgt.] Stanton . . . ." Id. at ¶ 12. Maj. Smolinsky, the Broome C.J. Administrator, states in his sworn affidavit that he "never received a grievance from [p]laintiff and even if [he] had . . ., [he] would have advised [plaintiff] to return it to the grievance officer." Dkt. No. 31-5 at 1 ¶ 4.

Defendants also proffer a portion the plaintiff's deposition transcript. See Dkt. No. 31-8. Plaintiff testified that, he "received an inmate handbook when [he] w[as] booked into the jail[.]" Id. at 20. He also stated that, when he asked McPeak for a grievance form, "she gave [him] a song and dance about how to put it in, what to write, what not to write." Id. at 16. Plaintiff indicated that, based on McPeak's instructions, he felt that she "was not gonna [sic] allow [him] to write what [he] need[ed] to be [in his] complaint . . . ." Id. at 16. However, plaintiff testified that McPeak provided him with a grievance form on two separate occasions, and that each time he was "able to walk away and fill [them] out on [his] own." Id. at 22. Plaintiff further testified that he never submitted a completed grievance form to McPeak because he "didn't trust . . . [her] to process it correctly, because she had a reputation around the jail for walking over

12

people when they write grievances," id. at 16; that McPeak was "blackballing" plaintiff, id. at 19; and that McPeak was "stonewalling the grievance process from the beginning[,]" such that the grievance process at Broome C.J. "exists in theory, not in practice." Id. at 22, 26.  Moreover, plaintiff expressly testified that he "did not" ever submit a completed grievance form to McPeak and, instead, "sent it to the Commission of Corrections." Id.  Plaintiff stated that the Commission on Corrections "could have sent [the grievance] to the jail to process it.  Nobody tried to circumvent the grievance.  They didn't even send it back to the prison to process it." Id. at 28.

Based on the foregoing, the undersigned concludes that defendants' aforementioned admissible evidence establishes that no genuine issue of material fact exists concerning plaintiff's failure to exhaust administrative remedies, as he failed to file a grievance with respect to either of the claims currently pending before this Court.  See Crenshaw v. Syed, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (accepting as true the defendants' assertions made in their uncontroverted statement of material facts that the facility had no records of plaintiff filing any grievance or administrative appeal with respect to the claims raised in his federal lawsuit, and dismissing the plaintiff's complaint for failure to exhaust available administrative remedies.).  Critically, McPeak's and Maj. Smolinsky's sworn affidavits establish that a review of the Broome C.J. inmate grievance records reveal that plaintiff never filed any grievance at that facility.  See Dkt. No. 31-4 at 3 ¶ 12; Dkt. No. 31-5 at 1 ¶ 4.  Further, plaintiff's belief, which he expressed at deposition, that it was the responsibility of the New York State Commission of Corrections to send his grievance to Broome C.J. is misplaced and unsupported by any authority of which the undersigned is aware.  Indeed, as set forth above, the Broome

C.J. inmate grievance procedure in effect at all relevant times did not contemplate an inmate resorting to the Commission of Corrections until step six of its seven-step grievance procedure, and only as a tertiary level of review.  See  Dkt. No. 31-15 at 1-2.

Furthermore, no exception to the mandatory exhaustion requirement applies here.  As defendants' admissible evidence establishes, the Broome C.J.'s inmate grievance procedure, as set forth above, was available to plaintiff, as evidenced by McPeak's sworn affidavit, which demonstrates that she informed plaintiff of the proper procedure for filing a inmate grievances.  See Dkt. No. 31-4 at 2 ¶ 7.  Similarly, plaintiff acknowledged that he received an inmate handbook, which defendants have demonstrated contained the inmate grievance procedure.  See Dkt. No. 31-8 at 20.  Indeed, plaintiff's deposition testimony established that he was aware of the proper procedure for filing a grievance, but chose disregard it and, instead, decided to file letters to the Commission on Corrections and Maj. Smolinsky in September and October 2019—after the expiration of the five-day time limit for filing a grievance provided under the Broome C.J. grievance procedure.  See Hock v. Thipedeau, 245 F. Supp. 2d 451, 457 (D. Conn. 2003) ("[The plaintiff] knowingly and intentionally chose not to utilize [the grievance] procedures and, therefore, failed to exhaust administrative remedies."); see also Snyder v. Whittier, 428 F. App'x 89, 91 (2d Cir. 2011) (summary order) ("An untimely or otherwise procedurally defective administrative grievance also does not constitute proper exhaustion." (internal quotation marks and citation omitted)).

Moreover, with respect to plaintiff's reasoning for deciding not to follow the Broome C.J.'s inmate grievance procedure, plaintiff's vague and conclusory assertions that he did not trust McPeak to properly file his grievance and/or that she would retaliate

14

in some way against him if he filed a grievance fail to establish that the grievance process was unavailable. Khudan v. Lee, No. 12-CV-8147 (RJS), 2016 WL 4735364, at *6 (S.D.N.Y. Sept. 8, 2016) ("[The p]laintiff's accusations [regarding grievances], which stand alone and are unsupported, are insufficient to withstand summary judgment."(internal quotation marks and citation omitted)); see also Contino v. City of New York, No. 11-CV-8537 (DLC), 2013 WL 4015816, at *6 (S.D.N.Y. Aug. 7, 2013) ("[The plaintiff's] conclusory assertion that he feared retaliation if he completed the grievance process is insufficient to excuse his obligation to exhaust the administrative grievance process."). Indeed, this Court previously dismissed, for failure to state a claim, plaintiff's cause of action against McPeak alleging interference with the grievance process. See Dkt. No. 8 at 12-13, 17-18. Finally, because plaintiff's failure to exhaust available administrative remedies relating to the incidents giving rise to his present claims—which occurred nearly two years ago—is no longer curable, dismissal with prejudice is appropriate. See Richard v. LeClaire, No. 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at *9 (N.D.N.Y. May 6, 2019) ("Because [the p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice.").

Based on the foregoing, the undersigned recommends that plaintiff's Complaint be dismissed for failure to exhaust administrative remedies. In addition, because dismissal is recommended based on failure to exhaust administrative remedies, the undersigned need not consider defendants' alternative arguments. See Scott v. Uhler, 9:16-CV-403 (TJM/CFH), 2019 WL 5197139, at *6 n. 10 (N.D.N.Y. July 31, 2019) ("As the undersigned concludes that [the] plaintiff has failed to exhaust his administrative

remedies prior to commencing suit or that administrative remedies were unavailable to him, the undersigned declines to reach the merits of the plaintiff's [Fourteenth Amendment] claims."), report and recommendation adopted, No. 9:16-CV-403 (TJM/CFH), 2019 WL 4667495 (N.D.N.Y. Sept. 25, 2019); Oliver, 2008 WL 508909, at *5 ("Because we find that [the p]laintiff failed to exhaust his administrative remedies, we need not address the merits of his Eight Amendment claim nor the defenses proffered in response.").

### IV. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 31) be **GRANTED IN ITS ENTIRETY**; and it is further

**RECOMMENDED**, plaintiff's Complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health

and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.[5]

       Dated: July 1, 2021
             Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[5] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).